IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DECARLOUS SPEARS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil No. 11-958-DRH-CJP** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to Chief Judge David R. Herndon pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Decarlous Spears seeks judicial review of the final agency decision denying him Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

## Procedural History

Mr. Spears applied for DIB and SSI in 2009, alleging disability beginning on July 28, 2009.  (Tr. 125, 132).  The application was denied initially and on reconsideration.  After a hearing, Administrative Law Judge (ALJ) Stephen M. Hanekamp denied the application on July 5, 2011.  (Tr. 11-19).  Plaintiff's request for review was denied by the Appeals Council, and the July 5, 2011, decision became the final agency decision.  (Tr. 1).

Plaintiff has exhausted his administrative remedies and has filed a timely complaint in this court.

## Issue Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ failed to properly analyze evidence establishing that plaintiff has limitations from sleep apnea, migraine headaches and mental impairments.

  2.  The ALJ improperly rejected results of IQ testing and did not send plaintiff for additional IQ testing.

  3.  The ALJ's credibility analysis was legally faulty.

## Applicable Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[1] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

In order to be eligible for DIB, a claimant must establish that she was disabled as of her date last insured. ***Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997)**. It is not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date. ***Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011)**.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is

---

[1] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **See,** ***Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992);** ***Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).** If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant has a severe impairment but does not meet or equal a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).** The Commissioner bears the burden of showing that there are a significant number of jobs in the economy that the claimant is capable of performing.  **See,** ***Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** ***Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).**

     It is important to keep in mind the proper standard of review for this Court.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  **42 U.S.C. § 405(g).**   Thus, the question for the Court is not whether Mr. Spears was, in fact, disabled during the relevant time period, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made. **See,** ***Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing** ***Diaz v. Chater*, 55 F.3d 300, 306 (7th  Cir.1995)).**

     This Court uses the Supreme Court's definition of "substantial evidence," that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**  In reviewing for substantial evidence, the entire administrative record is taken into consideration, but this Court

does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, **103 F.3d 1384, 1390 (7th Cir. 1997)**.  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, **597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Hanekamp followed the five-step analytical framework described above.  He concluded that plaintiff had not worked since the alleged date of onset and was insured for DIB through December 31, 2013.  He determined that plaintiff had severe impairments of obesity, a learning disorder and adjustment disorder with depressed mood.  The ALJ rejected plaintiff's contention that he also had severe impairments of low back pain, sleep apnea and migraine headaches.  He further determined that these impairments do not meet or equal a listed impairment.  In making these findings, the ALJ noted IQ testing resulting in a Verbal IQ of 71, Performance IQ of 62 and Full Scale IQ of 64, but rejected those results as invalid.

The ALJ found that Mr. Spears has the residual functional capacity to perform a limited range of work at the medium exertional level.  A vocational expert testified that he could still perform his past work as a janitor, tire adjuster and detailer.  The ALJ accepted this testimony, and found that he is not disabled. (Tr. 11-19).

### The Evidentiary Record

This Court has reviewed and considered the entire record in formulating this Report and Recommendation.  The following is a summary of some of the pertinent portions of the written record, focused on the issues raised by plaintiff.

**1.      Agency Forms**

Mr. Spears was born in March, 1978, and was 30 years old on the alleged date of

disability. (Tr. 160). He is insured for DIB through December 31, 2013. (Tr. 150).

The agency employee who wrote the initial Disability Report noted that Mr. Spears "seem[ed] to have some trouble understanding and had some trouble with concentrating. . . . The claimant had trouble reading the form." (Tr. 162). However, after another interview in November, 2009, another employee noted that he had no difficulty in reading, understanding or concentrating. (Tr. 213).

At the time he filed his application, plaintiff was 6'5" and weighted 280 pounds. (Tr. 164).

Plaintiff graduated from East St. Louis Senior High School in 1997. He indicated that he was in special education classes from the time he started school. (Tr. 169-170). In response to a request for information, the Department of Special Services for the school district responded that it could not find any "Special Services information" regarding Mr. Spears. (Tr. 180). A handwritten note on another form states "No Sp[ecial] Ed Rec[ords]." (Tr. 222). His cumulative GPA in his senior year of high school was 1.127. His class rank was 205/218. (Tr. 210).

He worked as a security guard, a car detailer, a tire changer and a hotel housekeeper. (Tr. 200). The security guard job consisted of watching a building to make sure that no one broke in. (Tr. 201). He was fired from the security guard job for getting into fights. (Tr. 187).

In a Disability Report, he stated that he was unable to work because he had learning problems, concentration problems, blackouts, "nerves,"migraine headaches and low back pain. (Tr. 165).

**2.   Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing on February 15, 2011. (Tr. 24).

Mr. Spears testified that he had no medical insurance and no income. (Tr. 29).

Mr. Spears testified that he was fired from his tire changer job for being late for work. He had also worked as a janitor cleaning the stadium. He worked for Yale Security for a few

years, but was fired for getting into a fight on the job with a member of the public. He went to work for another security company, but was fired for failing to show up for work. (Tr. 30-33). He did some work packing boxes through a temp agency in 2009. (Tr. 33-34).

Plaintiff said that he had migraine headaches every 3 or 4 days. His headaches last about 4 hours, and he has to lay down in a dark, quiet room. He takes Advil or Tylenol. (Tr. 36). He has sleep apnea, which interferes with his sleep at night. He usually sleeps from noon until 4:00 p.m. (Tr. 36-37).

He cannot read well. He testified that he graduated from high school, but was in special education classes. He passed the driver's license exam on the second try. If he goes to the grocery store, he takes someone with him to make sure he gets the correct change. (Tr. 37). He was suspended from school for fighting. He was fired from a job at a car dealer for getting into a fight. (Tr. 38-39). Mr. Spears testified that he could not work because he could not get along with people. (Tr. 39).

Plaintiff testified that he can stand for only 10 minutes, and then his back hurts. He was not taking any pain medication because he did not have any. (Tr. 40-41).

A vocational expert (VE) also testified. The ALJ asked her to assume a person who could do a full range of medium work, limited to less than occasional reading and writing at the 6th grade level or less, no arithmetic, simple routine tasks, only superficial interaction with coworkers and supervisors, and no direct interaction with the general public. The VE testified that this person could do plaintiff's past work of janitor, car detailer and tire adjuster. (Tr. 43-44). The ALJ added the assumption that the person could not do work with production standards or a rigorous production pace. The VE testified that this would eliminate his past work as a car detailer and tire adjuster, but he could still work as a janitor. (Tr. 44-45).

**3.    Medical Records**

Mr. Spears has had very little medical treatment. He was seen by Dr. Granger at Southern

Illinois Healthcare on January 14, 2011, with chief complaints of "breathing and low back pain." Dr. Granger indicated that his past medical history was significant for obesity and sleep apnea. He was referred to a pulmonologist for his sleep apnea. He complained of shortness of breath, but Dr. Granger suspected that it was related to sleep apnea as his "exam was totally normal." Dr. Granger made no notes regarding back pain. (Tr. 286-289).

A sleep study was done by Dr. Omar Awad in March, 2011. Dr. Awad saw plaintiff on April 14, 2011, and noted that the study showed that he had severe obstructive sleep apnea, nocturnal hypoxemia and was resistant to CPAP treatment. Dr. Awad noted that the office had been trying to contact plaintiff to do a BiPAP study, but Mr. Spears said he "never got the messages." Dr. Awad also noted that his tonsils were very large and were obstructing his airway. He felt that plaintiff needed to be referred to an ear, nose and throat specialist for consideration of a tonsillectomy, but he had no insurance. Mr. Spears was trying to get a Medicaid card. (Tr. 291).

A BiPAP study was done on April 25, 2011. (Tr. 296-301).

**4.**     **Consultative Examinations**

In 2002, psychologist Gregory C. Rudolph performed an intellectual assessment in connection with a prior application for benefits. Mr. Spears reported a history of having been in special education classes. On IQ testing, Mr. Spears had a Verbal IQ of 71, a Performance IQ of 62, and a Full Scale IQ of 64. Dr. Rudolph stated that these results put him in the "mild mentally handicap range." Dr. Rudolph said that the fact that plaintiff had received special education services was significant. The diagnoses were history of special education classes for the educably mentally handicapped and mild mental retardation. (Tr. 246-248).

Another psychologist, Stephen G. Vincent, performed a mental status assessment in October, 2009. Dr. Vincent reviewed school records which showed "a history of what appear to be learning disabilities." He noted that Mr. Spears had a high school education. Mr. Spears told

him that "he never was in formal special education classes." Mr. Spears also told him that he was unable to work because of upper and low back pain. He also said he depression because of his inability to function, and chronic daily headaches. He was not taking any medication, prescribed or over-the-counter. On examination, plaintiff was oriented and his thought processes were logical, coherent and relevant, but somewhat slow and deliberate. He had no disturbances in perception. Dr. Vincent stated "Despite allegations of learning disabilities he indicates no history of special education classes, although he did seem rather concrete; however, with simplification and rephrasing of test instructions he had no difficulties complying with all test demands." Dr. Vincent diagnosed adjustment disorder with depressed mood and learning disabilities by history. He concluded that plaintiff had the cognitive ability to effectively manage his funds. (Tr. 243-245).

A physical consultative exam was performed by Dr. Raymond Leung in October, 2009. Mr. Spears told Dr. Leung that he had blackouts, migraine headaches and low back pain. On exam, he was 6'5" tall and weighed 277 pounds. He was alert and oriented, and his memory appeared intact. His gait was normal. He was able to tandem walk, hop, heel walk, toe walk, and squat. His back was not tender. Straight leg rasing was only to 35 degrees. He had a full range of motion of the lumbar spine, with no spasms or muscle atrophy. His joints had a full range of motion. Arm, leg, pinch and grip strength were all full. Sensation was normal and his cranial nerves were intact. (Tr. 249-252).

**5.    Residual Functional Capacity (RFC) Assessments**

A state agency consultant reviewed the records and determined that plaintiff had the physical RFC to do work at all exertional levels, but that he should avoid ladders, ropes scaffolds and concentrated exposure to hazards such as machinery and heights. (Tr. 270-277).

Another state agency consultant evaluated plaintiff's mental RFC. He determined that plaintiff had moderate limitations in his ability to carry out detailed instructions, ability to

maintain attention and concentration for extended periods, ability to maintain regular attendance and be punctual, and ability to work with others and interact with the general public. However, he was able to carry out short and simple instructions, remember locations and work-like procedures, sustain an ordinary routine, make simple decisions, respond to changes in the work setting, accept instructions and criticism and maintain socially appropriate behavior. (Tr. 278-281).

### Analysis

Plaintiff's first and third points are related in that most of the evidence regarding his alleged limitations consisted of his own testimony. The ALJ found that he was not credible, and therefore did not accept all of the limitations that plaintiff claimed.

In his brief, plaintiff points out that he testified to the following limitations:

- poor ability to read;

- inability to get along with people and control his temper;

- debilitating headaches; and

- poor sleep due to sleep apnea.

Doc. 19, pp. 8-9. He argues that the ALJ should have accounted for these problems in his RFC assessment.

Plaintiff's argument is not well-taken. The ALJ did, in fact, include limitations based on the first two items. He stipulated that plaintiff could not work at a job which required reading at higher than a 6th grade level or more than occasional reading and writing. He limited him to simple, routine tasks. He also limited plaintiff to superficial interaction with coworkers and supervisors and no direct interaction with the public. The ALJ's determination that additional limitations were not warranted is supported by substantial evidence

With regard to the credibility determination, Mr. Spears correctly points out that ALJ Hanekamp used the boilerplate language that has been repeatedly criticized by the Seventh

Circuit. See, **Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012), and cases cited therein.** However, it is not the use of the boilerplate language in and of itself which is objectionable; it is the use of the boilerplate language unaccompanied by findings which are supported by evidence in the record. **Shauger, ibid**. The Seventh Circuit has made it plain that, if the ALJ "has otherwise explained his conclusion adequately, the inclusion of this [boilerplate] language can be harmless." *Filus v. Astrue*, ___ **F.3d** ___, **2012 WL 3990651, *4 (7th Cir. 2012)**. Plaintiff does not take issue with the validity of any of the reasons given by the ALJ for his credibility analysis. Instead, he simply characterizes it as "somewhat perfunctory."

    Contrary to plaintiff's suggestion, ALJ Hanekamp gave valid reasons supported by the record for finding that plaintiff was exaggerating the intensity, persistence and limiting effects of his pain and other symptoms. He noted that plaintiff's subjective statements were not supported by the evidence. For instance, plaintiff said that he had back pain, but he had never been treated for same and Dr. Leung's examination showed a full range of motion of the spine, no muscle spasms, no muscle atrophy and a normal gait. He claimed to suffer from debilitating headaches, but had never been treated for or diagnosed with migraines. His treating doctor, Dr. Granger, noted that his examination was "totally normal." He had given conflicting statements about whether he had been in special education classes in school, and his claim to have been in special education classes was contradicted by his school records. Further, the ALJ observed that none of the doctors who treated or examined him placed any limitations on his ability to function. His treating doctor, Dr. Granger, indicated that his sleep apnea was treatable by BiPAP and/or removal of his tonsils. The ALJ was entitled to consider all these factors. 20 C.F.R. §404.1529(c)(3)&(4).

    Plaintiff has not demonstrated any error with regard to the credibility findings. As the ALJ's credibility findings were not "patently wrong," they should not be overturned. ***Powers v.***

*Apfel*, **207 F.3d 431, 435 (7th Cir. 2000)**. See also, *Castile v. Astrue*, **617 F.3d 923, 930 (7th Cir. 2010)**, holding that credibility findings should not be overturned where the ALJ "thoroughly examined the evidence and clearly articulated his findings."

Plaintiff's second point is no stronger. He argues that the ALJ did not adequately consider whether he met the requirements of Listing 12.05C in light of his IQ scores.

A finding that a claimant's condition meets or equals a listed impairment means that the claimant is presumptively disabled. In order to be found presumptively disabled, the claimant must meet *all* of the criteria in the listing. 20 C.F.R. §416.925(d). Plaintiff bears the burden of showing that his condition meets or equals the listed impairment. *Maggard v. Apfel*, **167 F.3d 376, 379-380 (7th Cir. 1999)**.

The so-called Listings are set forth at 20 C.F.R. Supbpart P, App. 1. Listing 12.00 covers mental disorders in general; Listing 12.05 covers mental retardation. Listing 12.00, paragraph (A), explains that the structure of Listing 12.05 is different from the structure of most of the other Listings in the mental disorders section:

> Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

Thus, in order to meet Listing 12.05(C), Mr. Spears must satisfy *both* the criteria of the introductory paragraph, *and* the criteria of paragraph (C).

The criteria of the introductory paragraph of Listing 12.05 are "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." The requirement of onset before age 22 is intended to limit 12.05 to an "innate condition" as opposed to conditions caused by disease or accident suffered as an adult. See, *Novy v. Astrue*, **497 F.3d 708, 709 (7th Cir. 2007)**.

The criteria of 12.05(C) are "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  The IQ scores referred to in Listing 12.05 are scored on the scale that is used by the Wechsler series, which is the testing that was administered to Mr. Spears in 2002.  Further, "where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."  Listing 12.00, paragraph D(6)(c).

ALJ Hanekamp rejected both the IQ test results and the diagnosis of mild mental retardation, concluding that they "could not possible be valid."  (Tr. 17).  He gave a number of reasons for this conclusion.  At the time of the testing, plaintiff told Dr. Rudolph that he had been in special education classes.  This, of course, was contradicted by plaintiff's later statements and by his school records.  No other doctor, including Dr. Vincent, had indicated "even a suspicion" of mental retardation.  When Dr. Vincent examined him in 2009, his thinking seemed rather concrete, but, after simplification and rephrasing of the questions, "he had no difficulties complying with all test demands."  (Tr. 16).  The ALJ noted that the record established that plaintiff had graduated from high school, had obtained a drivers license and had driven a car without any apparent difficulties until he lost his license for speeding.  Significantly, he had worked for a number of years, and none of his jobs ended due to cognitive difficulties.  These are valid reasons, grounded in the evidence, which support the ALJ's conclusion that the IQ scores and diagnosis of mild mental retardation were not valid.  At most, there was a conflict in the evidence, but it is the function of the ALJ, and not this Court, to weigh the evidence and decide such conflicts.  This Court cannot substitute its judgment for that of the ALJ.  **White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005).**

Plaintiff suggests that the ALJ was remiss in not ordering another round of IQ testing.

-12-

Notably, plaintiff did not request additional testing at the hearing or at the Appeals Council stage. Mr. Spears was represented by an attorney, and the ALJ was entitled to assume that he was putting forth his best case for benefits. ***Buckhanon ex. rel J. H. v. Astrue***, 368 Fed. Appx. 674, 679 (7th Cir. 2010). Courts generally defer to the ALJ's decision about how much evidence is sufficient to develop the record and, especially where plaintiff has counsel, the burden is on plaintiff to "introduce some objective evidence that further development of the record is required." ***Poyck v. Astrue*** 414 Fed. Appx. 859, 861 (7th Cir. 2011). Here, plaintiff produced no such objective evidence.

In sum, this is not a case in which the ALJ ignored evidence favorable to the claimant. See, e.g., ***Arnett v. Astrue***, 676 F.3d 586 (7th Cir. 2010). Rather, the ALJ considered the evidence and gave his reasons for the weight he assigned to it. This is sufficient. The decision of the ALJ should not be overturned where he has considered all relevant evidence and set forth a discussion sufficient to build a logical bridge from the evidence to his conclusion. ***Denton v. Astrue***, 596 F.3d 419, 425-426 (7th Cir. 2010).

## <u>Recommendation</u>

This Court recommends that the Commissioner's final decision denying Decarlous Spears' application for benefits be **AFFIRMED**.

Objections to this Report and Recommendation must be filed on or before **October 15, 2012**.

**Submitted:   September 26, 2012.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD
UNITED STATES MAGISTRATE JUDGE**