IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DECARLOUS SPEARS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
Carolyn W. Colvin,[1]

    Defendant.                      No. 11-cv-958-DRH-CJP

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I.    INTRODUCTION

Before the Court is a Report and Recommendation (R&R) (Doc. 20) of United States Magistrate Judge Clifford J. Proud, issued pursuant to 28 U.S.C. § 636(b)(1)(B), recommending that the Commissioner's final decision denying plaintiff Decarlous Spears' application for benefits be affirmed. The R&R was sent to the parties, with a notice informing them of their right to file "objections" within fourteen days of service of the R&R. In accordance with the notice, plaintiff filed timely objections to the R&R (Doc. 21). Because plaintiff filed objections, this Court must undertake *de novo* review of the objected-to portions of the R&R. 28

---

[1] Carolyn W. Colvin was named Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is automatically substituted as defendant herein. *See also*, the last sentence of 42 U.S.C. § 405(g). ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). **The Clerk is instructed to change the docket sheet accordingly.**

U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); SOUTHERN DISTRICT OF ILLINOIS LOCAL RULE 73.1(b); *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may "accept, reject, or modify the recommended decision." *Willis*, 199 F.3d at 904. In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues for which specific objection has been made. *Id.* However, the Court need not conduct a *de novo* review of the findings of the R&R for which no objections have been made. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985). Plaintiff specifically objects to the R&R's analysis. Plaintiff argues the R&R does not hold the ALJ to the proper legal standard regarding the determination of plaintiff's residual functional capacity (RFC), the analysis of plaintiff's IQ, or the analysis of plaintiff's credibility. For the reasons discussed herein, the Court **ADOPTS** the findings and recommendation of the R&R.

## II. BACKGROUND

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying him Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff applied for DIB and SSI in 2009, alleging disability beginning on November 7, 2008 (Tr. 11). The application was denied initially and on reconsideration. After a hearing held on February 15, 2011, Administrative Law Judge (ALJ) Stephen M. Hanekamp denied the application on July 5, 2011 (Tr. 11-19). At the hearing, plaintiff and Chrisann

Schiro-Geist, Ph.D., an impartial vocational expert, testified. Plaintiff was represented by counsel (Tr. 11). The Appeals Council denied plaintiff's request for review and thus the July 5, 2011 decision became the final decision (Tr. 1-3).

Plaintiff specifically objects to the R&R's analysis of plaintiff's complaint (Doc. 20, pp. 9-13). Thus, as plaintiff does not object to the R&R's summary of the applicable legal standards, the decision of the ALJ, the evidentiary record, evidentiary hearing, medical records, consultative examinations, and RFC assessments, the Court will not recite them fully now and refers to the R&R for a more complete summary.

In brief, plaintiff was born on March 3, 1978, and was 30 years old on the alleged date of disability (Tr. 160). He graduated from East St. Louis Senior High School in 1997 (Tr. 169). In a disability report, he stated that he was unable to work because he had learning problems, concentration problems, blackouts, "nerves," migraine headaches, and low back pain (Tr. 165). He has worked as a security guard, a car detailer, a tire changer, and a hotel housekeeper (Tr. 200). At the hearing, plaintiff reported his most recent job was packing boxes through a temporary agency in 2009 (Tr. 34). The ALJ concluded plaintiff is capable of performing past relevant work as a janitor, tire adjuster, and detailer and has not been under a disability from November 7, 2008 through the date of his decision (Tr. 17- 18).

### III.   ANALYSIS

The Court has reviewed the legal standard Magistrate Judge Proud employed *de novo* and agrees with the standard as discussed in the R&R. Thus, the Court will only summarize the proper standard it will use to determine the correctness of the ALJ's findings below.

#### a. Legal Standards

This Court's scope of review is limited in a social security appeal to ensuring that substantial evidence supports the decision and that it is free from mistakes of law. *See Books v. Chater,* 91 F.3d 972, 977-78 (7th Cir. 1996). The Supreme Court definition of "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The Court takes the entire administrative record into account but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater,* 103 F.3d 1384, 1390 (7th Cir. 1997) (*overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1997)). However, despite this deferential review, the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue,* 597 F.3d 920, 921 (7th Cir. 2010).

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] In order to determine whether a claimant is disabled, the

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.*, and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. §

ALJ must consider (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform relevant work; and (5) whether the claimant is capable of performing any work within the economy given his age, education, and work experience. 20 C.F.R. § 404.1520(b-f); *see Schroeter v. Sullivan,* 977 F.2d 391, 393 (7th Cir. 1992). If the commissioner finds the claimant has a severe impairment which renders him unable to perform his past relevant work, the burden shifts to the Commissioner to show there are significant jobs he is capable of performing. *See Bowen v. Yuckert,* 482 U.S. 137, 145 n. 5 (1987).

### b. **Application**

Plaintiff raises three main arguments in support of his complaint:

1. The ALJ erred in determining plaintiff's residual RFC by failing to analyze properly evidence regarding plaintiff's sleep apnea, migraines, and depression.

2. The ALJ erred in failing adequately to analyze whether plaintiff met a listing regarding his mental impairments, in failing to develop a full and fair record by ordering an additional IQ test, and by improperly rejecting the IQ score obtained by the consultative examiner.

3. The ALJ erred in making summary and insufficient findings regarding plaintiff's credibility.

---

416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

The Court has thoroughly reviewed the record and pleadings in this matter and is in agreement with Magistrate Judge Proud that the ALJ's findings were supported by "substantial evidence." *Richardson,* 402 U.S. at 401.

### i. Limitations and Credibility Determinations

Plaintiff argues in his objections, as in his brief, that the ALJ did not properly analyze the evidence when making his RFC assessment. As this objection closely relates to plaintiff's credibility objections, the Court will address them together. The ALJ determined plaintiff had the following severe impairments: obesity, a learning disorder, and an adjustment disorder with depressed mood (Tr. 13). The ALJ determined plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that [plaintiff] has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). He is able to perform tasks where reading and writing are not critical to task performance and are less than occasional and at the sixth grade level or less. He cannot perform tasks requiring making change or doing mathematical calculations. He is able to perform simple, routine tasks that can be performed independently, which beyond that involve only superficial interaction with co-workers and supervisors and no direct interaction with the general public. Superficial means no negotiation, mediation, arbitration, confrontation and supervision of others.

(Tr. 15).

Plaintiff argues the ALJ's RFC finding is not supported by "substantial evidence" because it does not address evidence regarding limitations arising from inability to work with others, depression, 3-4 migraine headaches per day, back pain, and sleep apnea.

1. <u>**Ability to Work With Others and Depression**</u>

The ALJ determined plaintiff's diagnosis of adjustment disorder with depressed mood was a severe impairment (Tr. 13). At the hearing, plaintiff did not testify to limitations from depression, but stated he did not think he could work because he cannot get along with others (Tr. 39). Thus, as to plaintiff's inability to work with others, the ALJ clearly took plaintiff's testimony into account as he limited plaintiff to "only superficial interaction with co-workers," going so far as to define what he meant by superficial.

As to the credibility of plaintiff's reports of depression, the ALJ stated that plaintiff's subjective statements were not fully supported by the evidence as a whole. The ALJ found:

> In regard to [plaintiff's] depression, he advised Dr. Vincent he felt depressed due to an inability to function as he had in the past with episodes of anger, irritability, and frustration. He also reported problems with insomnia, fatigue, lack of interest in previously enjoyable activities, difficulty concentrating, and feeling useless and worthless. However, [plaintiff] admitted he had never been seen by a psychologist or psychiatrist and that he had not had any formal psychological and/or psychiatric treatment. Mental status examination revealed [plaintiff] to be oriented to person, place, time, and situation and that his thought processes were logical, coherent and relevant. The examiner noted [plaintiff] did not have any difficulty relating to him and that there was no disturbance in perception noted. He diagnosed [plaintiff] with an adjustment disorder with a depressed mood and learning disabilities, as per history.
>
> . . .
>
> In regard to [plaintiff's] mental health problems, there has been no documented serious deterioration in his personal hygiene or habits, daily activities or interests, effective intelligence, reality contact, thought processes, memory, speech, mood and affect, attention span, insight, judgment or behavior patterns over any extended period of

>  time. Furthermore, when evaluated by Dr. Vincent in October 2009, his mental status examination was, for the most part, within normal limits. Also, even though [plaintiff] has alleged significant problems with depression, he admitted he had not sought any treatment from mental health specialists and that he was not taking a psychopharmacological agent.

(Tr. 17).

Plaintiff summarily states throughout his objections that the ALJ failed to take plaintiff's inability to obtain treatment into account. As to credibility, generally the ALJ "must not draw any inferences" about a claimant's condition from a failure to obtain treatment unless the ALJ has explored the claimant's explanations as to the lack of medical care. *Craft v. Astrue,* 539 F.3d 668, 679 (7th Cir. 2008) (citing SSR 96-7p). However, the ALJ is entitled to consider plaintiff's failure to seek treatment, taking any explanations into consideration, when making the credibility determination. *See* 20 C.F.R. § 404.1529; *Sienkiewicz v. Barnhart,* 409 F.3d 798, 803-04 (7th Cir. 2005); *Smith v. Apfel,* 231 F.3d 433, 440 (7th Cir. 2000); *Luna v. Shalala,* 22 F.3d 687, 691 (7th Cir. 1994).

At the hearing held in February 2011, the ALJ asked, "Do you have medical coverage?" Plaintiff replied, "No, sir" (Tr. 29). When plaintiff's counsel questioned plaintiff concerning his limitations arising from sleep apnea, plaintiff noted he had "another doctor's appointment on the 2nd of next month to go see a lung doctor" (Tr. 35). Following the hearing held in February 2011, plaintiff's counsel submitted plaintiff's sleep study report from April 2011. The follow-up report of Dr. Awad states that plaintiff failed to have treatment and that his referrals were impaired by his lack of insurance, but that plaintiff was working on obtaining a

Medicare card. The report further states Dr. Awad tried to contact plaintiff to arrange a Bi-PAP study, but plaintiff stated he "never got the message" (Tr. 291).

Thus, the ALJ was aware of plaintiff's lack of insurance at the time of his credibility determination. Although the ALJ did not specifically cite plaintiff's lack of insurance, the Court does not find that this deems the ALJ's credibility determination invalid in this instance. *See Jones v. Astrue,* 623 F.3d 1155, 1160 (7th Cir. 2010) ("The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions."). The ALJ based his credibility determination as recited above on numerous factors, including the medical evidence before him. In light of the scarce record as to plaintiff's work-related limitations arising from his depression and his counsel's failure to supplement the record with evidence of plaintiff's financial inability to obtain treatment or evidence that plaintiff sought low-cost medical care and was denied, *see Bucholtz v. Barnhart,* 98 Fed. App'x. 540, 543 (7th Cir. 2004) (citing *Glenn v. Sec'y of Health and Human Servs.,* 814 F.2d 387, 391 (7th Cir. 1987)), the Court does not find this determination was "patently wrong" in this instance. *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000).

### 2. Back Pain and Headaches

Plaintiff further asserts that the ALJ improperly failed to consider plaintiff's testimony of headaches and back pain. As to back pain, the ALJ found plaintiff's complaints of low back pain did not amount to a severe impairment and were not credible (Tr. 13, 18). The ALJ cites Dr. Lueng's physical examination which,

"revealed full range of motion in the lumbar spine, no muscle atrophy or spasms, and a normal gait" (Tr. 13, 18). Thus, the ALJ found. "there is no documented medically determinable impairment that could reasonably be expected to cause the symptom of back pain, and neither are there any clinical signs that could correlate to symptoms of back pain" (Tr. 13). This conclusion is supported by "substantial evidence." *Richardson,* 402 U.S. at 401

As to migraines, as noted in defendant's brief (Doc. 19, p. 9), plaintiff's characterization of his testimony as to migraines, as stated in his complaint and instantly repeated in his objections, misstates the record. At the hearing, when plaintiff's counsel asked if plaintiff experienced headaches every three or four days, plaintiff answered, "yes" (Tr. 36). Thus, contrary to plaintiff's assertions, plaintiff did not testify that he experiences headaches three or four times a day. Plaintiff's testimony of one headache every three to four days also finds support in the medical record (Tr. 249).

The ALJ found plaintiff's complaints of migraines did not amount to a severe impairment (Tr. 14). The ALJ noted that although plaintiff testified he took medication and napped in a dark room for four hours when he had a headache, the evidence failed to show there had ever been an actual diagnosis or medical treatment for migraine headaches (Tr. 14). As to credibility, he noted the same (Tr. 19). Again, the Court finds these conclusions are supported by "substantial evidence" and not "patently wrong." *Powers,* 207 F.3d at 435.

### 3. Sleep Apnea

Plaintiff also alleges that the ALJ improperly failed to consider limitations from sleep apnea. The ALJ found sleep apnea was not a severe impairment. The ALJ stated plaintiff, "reported he had been diagnosed with obstructive sleep apnea, but there was no evidence that that condition could not be controlled with a Bi-PAP or tonsillectomy. Therefore, it is not an impairment that is expected to cause [plaintiff] any significant problems for a 12-month period" (Tr. 13-14). As to credibility, the ALJ noted that Dr. Granger initially diagnosed sleep apnea and shortness of breath, likely resulting from the sleep apnea. Dr. Granger further noted "his exam was totally normal" (Tr. 18) (citing Tr. 286). The ALJ went to on to note that a sleep study conducted in April 2011 confirmed "severe obstructive sleep apnea" and that the physician indicated plaintiff's tonsils were extremely large and obstructing plaintiff's airway and thus a tonsillectomy might be considered despite plaintiff's age (Tr. 18).

Plaintiff argues the ALJ did not sufficiently cite medical evidence that plaintiff's sleep apnea was in fact controlled with treatment or evidence regarding plaintiff's inability to obtain treatment. Strictly speaking, the ALJ did not cite plaintiff's failure to seek treatment in finding plaintiff's sleep apnea was not a severe impairment. The ALJ determined plaintiff's sleep apnea was not a severe impairment because there was no evidence that it could not be controlled with treatment. The ALJ appropriately relied on the record before him for this

conclusion and there is "substantial evidence" to support it. *Richardson,* 402 U.S. at 401.

Plaintiff seems to imply that it was the ALJ's duty to develop the record more fully to determine whether treatment in fact controlled plaintiff's sleep apnea and whether he was able to obtain treatment. Plaintiff knew of his sleep apnea diagnosis and the recommended course of treatment at the time of the hearing in February 2011. The ALJ left the record open for plaintiff's counsel to submit additional evidence, which he did. Again, if there was evidence that plaintiff sought treatment and that it failed to control his symptoms or that plaintiff did not seek or was denied treatment due to financial inability, the ALJ may presume that his counsel would have so questioned plaintiff or supplemented the record with such evidence. *See Glenn,* 814 F.2d at 391. It is plaintiff's burden to demonstrate he has a legal disability. 20 C.F.R. § 404.1512(c). Instantly, the Court is not charged with re-weighing the evidence, but merely determining whether the ALJ's decision is supported by more than a mere scintilla of evidence, *Richardson,* 402 U.S. at 401, and that there is a "logical bridge" between the evidence and findings. *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996). The Court finds the ALJ's conclusions are supported by "substantial evidence." *Richardson,* 402 U.S. at 401.

### 4. Credibility Overall

Further, the Court adopts the R&R's finding that the ALJ made proper credibility findings. As the R&R notes, the ALJ used the "boilerplate language"

that the Seventh Circuit has repeatedly criticized. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). However, where the ALJ otherwise explains his conclusions adequately, the inclusion of this language can be harmless. *Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012). Plaintiff generically argues the ALJ's "perfunctory" credibility determination is meaningless because it does not communicate what weight the ALJ actually gave the testimony.

Based on the ALJ's specific statements recited above and his additional statements as to credibility stated in his decision, the Court finds the ALJ gave valid reasons supported by the record for finding plaintiff exaggerated the intensity, persistence, and limiting effects of his pain and other symptoms. The Court agrees with the R&R that the ALJ's credibility findings were not "patently wrong" and thus should not be overturned. *Powers,* 207 F.3d at 435.

### ii. IQ Scores

Plaintiff additionally argues the ALJ erred in failing to analyze adequately whether plaintiff met a listing regarding his mental impairments, in failing to develop a full and fair record by not ordering an additional IQ test, and by improperly rejecting the IQ score obtained by the consultative examiner.

The ALJ found plaintiff's impairments do not meet or equal any of the criteria of a listing (Tr. 14-15). Plaintiff's brief argues the ALJ did not adequately consider whether he met the requirements of Listing 12.05(C). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C). Listing 12.05 covers mental retardation. The introductory paragraph of § 12.00, Mental Disorders, explains,

> Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A though D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

Thus, as explained in the R&R, plaintiff must satisfy *both* the criteria of the introductory paragraph *and* the criteria of paragraph (C).

The criteria of the introductory paragraph of Listing 12.05 are "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The requirement of onset before age 22 is intended to limit 12.05 to an "innate condition" as opposed to conditions caused by disease or accident suffered as an adult. *See Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007).

The criteria of 12.05(C) are "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." The IQ scores referred to in Listing 12.05 are scored on the scale that is used by the Wechsler series, which is the testing that was administered to plaintiff in 2002. Further, "where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." Listing 12.00, para. D(6)(c).

The ALJ rejected the IQ test results and diagnosis of mild mental retardation resulting from Dr. Rudolph's evaluation in April 2002, concluding

they "could not possibly be valid" (Tr. 17) (citing Tr. 247-48). As found in the R&R, the Court instantly agrees that the ALJ adequately explained his reasoning for this conclusion. Significant to Dr. Rudolph's diagnosis was plaintiff's representation that he had received special education services for the mentally handicapped. However, later documentation (Tr. 180, Tr. 222) and plaintiff's own statements to Dr. Vincent (Tr. 243) contradict this assertion. The ALJ stated, "[n]o other psychologist or medical source has indicated a diagnosis of mild mental retardation, or even a suspicion of it" (Tr. 16). Dr. Vincent's much more recent evaluation of plaintiff in 2009, noted plaintiff seemed "rather concrete," but after "simplification and rephrasing of test instructions, [plaintiff] had no difficulties complying will all tests demands" (Tr. 245). Dr. Vincent further noted his belief that plaintiff has the cognitive capacity to effectively manage his own funds (Tr. 245).

> As to plaintiff's activities and work history, the ALJ noted,
>
> [Plaintiff's] work history and daily living are not consistent with mental retardation or significant deficits in adaptive functioning. Specifically, [plaintiff] has a 12th grade education, obtained a driver's license, and drove an automobile without any apparent difficulties, until he lost his license for speeding, which is not related to cognitive limitations. There is no evidence of any limitations in the ability to take care of personal needs and hygiene, commute to work, and maintain a work schedule. [Plaintiff] has been able to make acquaintances and socialize, insofar as he has a daughter 13 years old, and lives with friends. [Plaintiff] has also worked: he cleaned stadium full time, changed tires, and served as a security guard. None of these jobs ended due to cognitive abilities. He testified the tire job ended because he was late for work due to the death of a close friend. Security jobs ended due to faulty judgments he made in handling certain delicate social situations, but not due to any inability to learn, retain and carry out his day to day job duties.

(Tr. 16-17).

On the basis of the above, the ALJ found the IQ scores and diagnosis of mild mental retardation from 2002 invalid. The Court's review of the record reveals that "substantial evidence" supports the ALJ's conclusion. *Richardson,* 402 U.S. at 401. As the R&R notes, to the extent the evidence conflicted, the ALJ is charged with resolving evidentiary conflicts, not this Court. *See White v. Barnhart,* 415 F.3d 654, 659 (7th Cir. 2005).

Plaintiff argues the ALJ should have ordered additional testing as part of his step three analysis. First, the Court notes that plaintiff does not argue that either plaintiff or his counsel sought additional examinations or testing at the administrative level. *See Glenn,* 814 F.2d at 391. Thus, there is no denial of such request for the Court to review. Plaintiff argues the ALJ should have ordered additional IQ testing in the absence of such a request from plaintiff or his counsel.

The Court gives considerable deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures are required to accomplish that goal. *Poyck v. Astrue,* 414 Fed. App'x. 859, 861 (7th Cir. 2011); *see also Nelms v. Astrue,* 553 F.3d 1093, 1098 (7th Cir. 2009); *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). Further, "[t]he ALJ is not *required* to order [consultative] examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient." *Skinner v. Astrue,* 478 F.3d 836, 844 (7th Cir. 2007) (citing 20 C.F.R. §§ 416.912(f), 416.917)).

Instantly, the evidence was sufficient to support the ALJ's decision. The ALJ made an effort to probe plaintiff's recent medical history and ongoing health problems by asking questions about his day-to-day activities and symptoms. He considered the medical records provided by plaintiff and even left the record open to allow plaintiff's counsel to supplement the record with additional medical evidence (Tr. 47). There is no evidence before this Court that at any point plaintiff or his counsel requested additional examinations or testing of any kind at the administrative level. Instantly, plaintiff cites no objective factors which would have required additional IQ testing. *Poyck*, 676 F.3d at 861. For example, plaintiff does not argue that his condition has changed since his 2009 exam.

The ALJ considered both the 2002 and 2009 exams and found the 2002 results invalid. As explained above, the ALJ adequately explained his reasoning for this decision. This decision was based on "substantial evidence." *Richardson*, 402 U.S. at 401. Plaintiff's disagreement with the ALJ does not amount to "objective evidence" that additional tests or consultative examinations were required.

## IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the findings and recommendation of the R&R. (Doc. 20). The Commissioner's final decision denying plaintiff Decarlous Spears' application for benefits is **AFFIRMED**. The Clerk is instructed to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 28th day of March, 2013.

Digitally signed by
David R. Herndon
Date: 2013.03.28
14:37:45 -05'00'

**Chief Judge
United States District Court**